# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| WILLIAM G. MOORE, JR., | : |
| Plaintiff, | : |
| v. | : Civil Action No.: 92-2288 (RMU) |
| | : Document No.: 340 |
| MICHAEL HARTMAN *et al.*, | : |
| Defendants. | : |

| | |
|---|---|
| WILLIAM G. MOORE, JR., | : |
| Plaintiff, | : |
| v. | : Civil Action No.: 93-0324 (RMU) |
| | : Document No.: 74 |
| UNITED STATES OF AMERICA, | : |
| Defendant. | : |

## MEMORANDUM OPINION

### GRANTING THE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

### I. INTRODUCTION

This civil case follows an unsuccessful criminal fraud prosecution against the plaintiff. The plaintiff alleges that federal postal inspectors induced an Assistant United States Attorney to bring criminal charges against him in retaliation for speaking out against policies of the United States Postal Service. In addition, the plaintiff brings an action under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b)(1), 2671-2680 (2000), alleging malicious prosecution.

Following a Supreme Court decision holding that the plaintiff bears the burden of proving the absence of probable cause to prevail on his claim that the inspectors successfully induced the

prosecution, the defendants – the five postal inspectors who are still alive out of the six against whom the plaintiff brought suit, as well as the United States – have moved for summary judgment. They argue that the plaintiff cannot prove the absence of probable cause. The plaintiff opposes the motion, contending that the courts have already rejected the government's claim that there was probable cause to prosecute him and that, in any event, a reasonable jury could conclude that there was no probable cause to prosecute him. Because the plaintiff is unable to establish a lack of probable cause, the court grants the defendants' motion for summary judgment.

## II.  FACTUAL & PROCEDURAL BACKGROUND

Because the facts of the underlying case have been set forth in numerous prior opinions, the court will not recount them in exhaustive detail here. *See Hartman v. Moore*, 547 U.S. 250 (2006); *Moore v. United States*, 213 F.3d 705 (D.C. Cir. 2000); *Moore v. Valder*, 65 F.3d 189 (D.C. Cir. 1996). Beginning in the mid-1980s, when Moore was President and Chief Executive Officer of Recognition Equipment, Inc. ("REI"), defendants Michael Hartman *et al.*, Postal Inspectors ("the Inspectors") for the United States Postal Service ("USPS"), began investigating the plaintiff and others in connection with a scheme to defraud and steal from the USPS. Pl.'s Opp'n to Defs.'s Renewed Mot. for Summ. J. ("Pl.'s Opp'n") at 5-6. The investigation centered on Peter Voss, a member of the USPS Board of Governors; REI; and Gnau & Associates, Inc. ("GAI"), a consulting firm that REI had hired on Voss's recommendation in connection with REI's effort to obtain an equipment contract with the USPS. *Id*. at 5-6, 25. Through their investigation, the Inspectors learned that Voss was receiving illegal payments from John Gnau,

the chairman of GAI, for referring REI to GAI, and that Voss's administrative assistant and two other GAI officials, William Spartin and Michael Marcus, were involved in the scheme. *Id*. at 6; Pl.'s Opp'n, Ex. 39 ("Gnau Grand Jury Statement") at 1.

Voss, Gnau and Marcus ultimately pleaded guilty for their involvement in the conspiracy, and Spartin entered into an immunity agreement with the government in exchange for his cooperation. *United States v. Recognition Equip., Inc.*, 725 F. Supp. 587, 589 (D.D.C. 1989). A grand jury returned an indictment against the plaintiff, REI and REI's vice president, Robert Reedy, charging them with conspiracy to defraud the United States, theft, receiving stolen property, and mail and wire fraud. *Id*. at 587. The matter proceeded to trial, but at the close of the government's case, the court granted the plaintiff's motion for judgment of acquittal, ruling that there was insufficient evidence to support an inference that he was aware beyond a reasonable doubt of the conspiracy. *Id*. at 602. The plaintiff then brought suit alleging five causes of action against the postal inspectors who conducted the investigation and the Assistant United States Attorney who prosecuted the case. After nearly two decades of litigation, only two claims remain: a *Bivens* claim[1] alleging that the inspectors induced a retaliatory prosecution against the plaintiff and an FTCA claim against the inspectors alleging malicious prosecution.

In April 2006, the Supreme Court, reversing the Court of Appeals, ruled that to prevail on his *Bivens* claim, the plaintiff must prove that the prosecutor lacked probable cause to bring the charges against him. *Hartman*, 547 U.S. at 265-66. Because probable cause is now "a decisive element of the plaintiff's claims[,]" and because the plaintiff now bears the burden of proving its

---

[1] *See Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971).

absence, this court granted an additional discovery period to allow for exploration of the bases for probable cause. *See* Mem. Op. (Mar. 27, 2007). The government now moves for summary judgment, arguing that the plaintiff cannot show an absence of probable cause.

## III. ANALYSIS

### A. Legal Standard for a Motion for Summary Judgment

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Diamond v. Atwood*, 43 F.3d 1538, 1540 (D.C. Cir. 1995). To determine which facts are "material," a court must look to the substantive law on which each claim rests. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A "genuine issue" is one whose resolution could establish an element of a claim or defense and, therefore, affect the outcome of the action. *Celotex*, 477 U.S. at 322; *Anderson*, 477 U.S. at 248.

In ruling on a motion for summary judgment, the court must draw all justifiable inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true. *Anderson*, 477 U.S. at 255. A nonmoving party, however, must establish more than "the mere existence of a scintilla of evidence" in support of its position. *Id.* at 252. To prevail on a motion for summary judgment, the moving party must show that the nonmoving party "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on

which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. By pointing to the absence of evidence proffered by the nonmoving party, a moving party may succeed on summary judgment. *Id.*

The nonmoving party may defeat summary judgment through factual representations made in a sworn affidavit if he "support[s] his allegations . . . with facts in the record," *Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999) (quoting *Harding v. Gray*, 9 F.3d 150, 154 (D.C. Cir. 1993)), or provides "direct testimonial evidence," *Arrington v. United States*, 473 F.3d 329, 338 (D.C. Cir. 2006). Indeed, for the court to accept anything less "would defeat the central purpose of the summary judgment device, which is to weed out those cases insufficiently meritorious to warrant the expense of a jury trial." *Greene*, 164 F.3d at 675.

### B. The Plaintiff Cannot Establish the Absence of Probable Cause

To prevail on his two remaining claims, the plaintiff must establish that the government lacked probable cause to bring charges against him.[2] He must make this showing to prevail on his *Bivens* claim because absence of probable cause is now an element of a retaliatory prosecution claim in this Circuit. *Hartman*, 547 U.S. at 265-66. And because absence of probable cause is an element of the tort of malicious prosecution under District of Columbia law, he must make this showing to prevail on his FTCA claim as well. *See Davis v. Giles*, 769 F.2d

---

[2] Specifically, in order to prevail on his *Bivens* retaliatory prosecution claim, the plaintiff must demonstrate that a reasonable and prudent man would not suspect that he had committed the offenses for which he was charged. *See Ornelas v. United States*, 517 U.S. 690, 695 (1996); *Gerstein v. Pugh*, 420 U.S. 103, 111 (1975). Because District of Columbia law controls his FTCA malicious prosecution claim, *see* 28 U.S.C. § 1346(b)(1) (2000), probable cause for the purpose of that claim is defined as "such reason supported by facts and circumstances as [would] warrant a cautious man in the belief that his action and the means taken in prosecuting it [were] legally just and proper," *Ammerman v. Newman*, 384 A.2d 637, 639-40 (D.C. 1978).

813, 814-15 (D.C. Cir. 1985).[3]

Ordinarily, when the facts are in dispute, the question of probable cause is one for the jury. *Davis*, 769 F.2d at 815. But this is not so when "an indictment, 'fair upon its face,'" has been "returned by a 'properly constituted grand jury[.]'" *Gerstein*, 420 U.S. at 117 n.19 (quoting *Ex parte United States*, 287 U.S. 241, 250 (1932)).[4] A valid indictment conclusively determines the existence of probable cause to bring charges against a suspect. *Ex parte United States*, 287 U.S. at 250; *see also United States v. King*, 482 F.2d 768, 776 (D.C. Cir. 1973); RESTATEMENT (SECOND) OF TORTS, § 664(2) (1977) (stating that "[t]he indictment of the accused by a grand jury is evidence that the person who initiated the proceedings had probable cause for initiating them"). The plaintiff correctly cites *White v. Frank* for the proposition that "though an indictment by a grand jury is generally considered prima facie evidence of probable cause in a subsequent civil action for malicious prosecution, this presumption may be rebutted by proof that the defendant misrepresented, withheld, or falsified evidence." 855 F.2d 956, 961-62 (2d Cir. 1988). *White* is binding only in the Second Circuit, however, and the plaintiff points out no

---

[3] As a preliminary matter, the court rejects the plaintiff's contention that the question of whether there was probable cause to bring the charges against him has already been resolved. The Court of Appeals explicitly stated that it had "no need to determine whether [the inspectors] actually had probable cause to pursue Moore's indictment." *Moore v. Hartman*, 388 F.3d 871, 877 (D.C. Cir. 2004). In any event, in light of the Supreme Court's opinion reversing the Circuit and remanding the case for further proceedings, the prior opinions in this case (including the prior denial of summary judgment on the malicious prosecution claim, *see Moore v. Hartman*, 332 F. Supp. 2d 252 (D.D.C. 2004)) lack preclusive effect.

[4] Although *Gerstein* and *Ex parte United States* address the question of probable cause to arrest, courts have applied these cases in the malicious prosecution context to establish probable cause to bring charges. *See, e.g.*, *Liles v. United States*, 638 F. Supp. 963, 967-68 (D.D.C. 1986); *Higgason v. Stephens*, 288 F.3d 868, 877 (6th Cir. 2002); *Schneider v. City of Redmond*, 2007 WL 2155805, at *1 (D. Or., July 23, 2007); *Crocker v. City of Kingsville*, 2006 WL 2092441 2006 U.S. Dist. LEXIS 51410, at *4 (S.D. Tex. July 26, 2006).

parallel exception in this Circuit to the rule that an indictment conclusively establishes probable cause.[5] Nonetheless, the court agrees that if the plaintiff were able to allege misconduct or irregularities in the grand jury proceeding sufficient to call into question the validity of the indictment, then the indictment would not conclusively establish probable cause.

In support of his claim that the government lacked probable cause to bring charges against him, the plaintiff argues that the indictment is stripped of any presumptive value because the grand jury proceeding was tainted by "improper," "unethical" and "bizarre" behavior that could only be explained by the government's recognition that there was no probable cause to indict. Pl.'s Opp'n at 20-21, 24. Specifically, he asserts that the defendants purposefully omitted exculpatory evidence from grand jury witness statements; "improperly controll[ed], without proper supervision by the U.S. Attorney, the evidence presented to the grand jury"; prevented grand jury witness Frank Bray from correcting a "'slanted' and 'one-sided' witness statement"; attempted to intimidate Spartin, one of the plaintiff's unindicted coconspirators; improperly showed Spartin other witnesses' grand jury statements; and lobbied the U.S. Attorney's office to prosecute the plaintiff. *Id*. at 21. He also argues that the government's abandonment of two legal theories of proof of the conspiracy represented an admission by the government that it lacked probable cause. *Id*.

---

[5]   Other Circuits have adopted approaches similar to that of the Second Circuit in *White v. Frank*. For example, in *Hand v. Gary*, the Fifth Circuit ruled that even though the grand jury had returned an indictment, government officials' malicious actions tainted the finding of probable cause. 838 F.2d 1420, 1426-27 (5th Cir. 1988). *See also Hinchman v. Moore*, 312 F.3d 198, 202-03 (6th Cir. 2002) (holding that a determination of probable cause does not bar a state law malicious prosecution claim where the claim is based on the police officer's supplying false information to establish probable cause); *Harris v. Roderick*, 126 F.3d 1189, 1198 (9th Cir. 1997) (adopting the reasoning of the Fifth Circuit in *Hand*).

Even drawing all justifiable inferences in the plaintiff's favor, none of the alleged misconduct undermines the validity of the indictment sufficiently to negate its conclusive effect as to probable cause.  First, the plaintiff's assertions that the defendants omitted exculpatory evidence from witness statements, prevented Bray from correcting a "one-sided" statement, and "improperly controlled . . . the evidence presented to the grand jury" do not create even a slight doubt as to the legitimacy of the grand jury proceeding.  As the Supreme Court emphasized in *United States v. Williams*, the government has no obligation to disclose exculpatory evidence to the grand jury, because the grand jury is an independent, accusatory body whose purpose is to determine whether there is an adequate basis for bringing a criminal charge, not to yield a "balanced" assessment of the case.  504 U.S. 36, 51-52 (1992).  "It would run counter to the whole history of the grand jury institution to permit an indictment to be challenged on the ground that there was inadequate or incompetent evidence before the grand jury."  *Id*. at 54 (quoting *Costello v. United States*, 350 U.S. 359, 363-64 (1956) (quotations omitted)).

To further support his assertion that the grand jury proceeding was "rigged," the plaintiff claims that the failure to disclose exculpatory evidence to the grand jury violated Department of Justice policy as stated in the U.S. Attorney's Manual.  Pl.'s Opp'n at 9, 21.  But non-compliance with the U.S. Attorney's Manual is not a permissible basis for a court to second-guess an indictment.  *Williams*, 504 U.S. at 51-54; *see also United States v. Gillespie*, 974 F.2d 796, 800-01 (7th Cir. 1992) (noting that the *Williams* Court considered and rejected the argument that an indictment should be dismissed if it was obtained in violation of the U.S. Attorney's Manual).  Therefore, this contention, even if true, fails to negate the validity of the indictment.

Next, the assertions that the inspectors lobbied the U.S. Attorney's office to prosecute the

plaintiff and that the government abandoned two legal theories of proof of the conspiracy are irrelevant to the question of probable cause. The first allegation demonstrates, at most, only the inspectors' retaliatory intent, which is a separate issue from the question of whether the government lacked probable cause to believe that the plaintiff had committed the charged crimes. Indeed, the need to prove the absence of probable cause on top of, and separately from, retaliatory intent was a key element of the Supreme Court's opinion. *Hartman*, 547 U.S. at 265. Nor does the second allegation have any bearing on whether there was probable cause to indict. The fact that the government abandoned theories of proof proves, at most, only that the government doubted that a jury could find the plaintiff guilty beyond a reasonable doubt based on the abandoned theories.

Thus, the only allegations that could conceivably discredit the grand jury proceeding, and therefore strip the indictment of its determinative effect on the issue of probable cause, are that the inspectors intimidated Spartin and showed Spartin other witnesses' grand jury statements prior to his testifying before the grand jury. Pl.'s Opp'n at 9-10, 21, 24. Even giving the plaintiff the benefit of all favorable inferences, these contentions alone are not sufficient to invalidate the indictment. First, the plaintiff offers deposition testimony related to a meeting between Spartin and the Inspectors at which the Inspectors ripped up a copy of Spartin's immunity agreement. Pl.'s Statement of Disputed Material Facts ("Pl.'s Stmt.") ¶ 111 (citing Pl.'s Opp'n, Ex. 41 ("Korman Deposition") at 426). The plaintiff also offers testimony describing the Inspectors' threat to charge Spartin's son with obstruction of justice. Pl.'s Stmt. ¶ 126 (citing Pl.'s Opp'n, Ex. 26 ("Trial Transcript") at 2599). These two incidents could fairly be interpreted as efforts by the Inspectors to intimidate Spartin. The plaintiff fails, however, to point to any evidence from

which to infer that the purpose of intimidating Spartin was to induce him to testify falsely.[6] Moreover, the plaintiff provides no evidentiary support for any actual link between the acts of intimidation and Spartin's "tainted" grand jury testimony.

Second, the plaintiff argues that the indictment lacks any presumptive validity because the grand jury indicted him based on Spartin's testimony that he believed the plaintiff was aware of the Voss kickbacks, and Spartin would not have provided this "phony opinion" had the Inspectors not shown him, in violation of grand jury secrecy rules, the grand jury statements of the plaintiff's unindicted coconspirators. Pl.'s Opp'n at 10. The question of what effect Spartin's testimony had on the grand jury's decision to indict is a question of fact, and therefore, at this stage the court will assume that the grand jury would not have indicted the plaintiff but for Spartin's testimony incriminating him. *See Anderson*, 477 U.S. at 255. The court also assumes at this stage that the Inspectors did, in fact, violate the procedures governing grand jury testimony. But the plaintiff fails to identify any evidence from which a reasonable jury could infer that the Inspectors' violation of the secrecy rules influenced Spartin's testimony regarding the plaintiff's awareness of the conspiracy. In fact, the chronology of relevant events points to the contrary.

The Inspectors showed Spartin the unindicted coconspirators' grand jury statements

---

[6]  The plaintiff's Statement of Disputed Material Facts refers to deposition testimony in which Inspector Hartman says that the act of ripping up Spartin's immunity agreement was "designed to exert some 'influence' over Spartin." Pl.'s Statement of Disputed Material Facts ("Pl.'s Stmt.") ¶ 112. The portion of the deposition transcript that the plaintiff cites as containing this quote was not provided to the court. Even if it were, however, the plaintiff has provided no evidence from which to infer that the "influence" the Inspectors wanted to exert over Spartin was to induce false testimony that Spartin believed the plaintiff was aware of the conspiracy. Likewise, although the plaintiff points to testimony concerning the Inspectors' threat to bring obstruction of justice charges against Spartin's son, it would be mere speculation to infer that the purpose of this threat was to induce Spartin to testify falsely against him.

"shortly after the meeting [at which the Inspectors ripped up Spartin's immunity agreement] on October 24, 1986." Pl.'s Stmt. ¶ 116 (citing Trial Transcript at 2550-54). On December 5th of that year, Spartin took a polygraph examination during which he stated that seeing other witnesses' grand jury statements had "colored" his perception of the scheme by making him realize "some of the things that were going on that [he] didn't know about." Pl.'s Opp'n, Ex. 52 ("Spartin Polygraph") at 14. This statement, viewed in isolation, could support the plaintiff's assertion that the Inspectors' violation of the secrecy rules affected Spartin's view of the events as described in his grand jury testimony. During the same polygraph examination, however, Spartin repeatedly denied having personal knowledge of the plaintiff's awareness of the scheme. *Id*. at 16, 19, 20, 28, 36, 40, 43, 45, 48, 49, 50. Then, when Spartin testified before the grand jury almost a year later, on September 1, 1987, he stated that "in [his] judgment [the plaintiff] and Reedy did know that Voss was receiving money from Gnau" in relation to REI's effort to obtain the USPS contract. Pl.'s Opp'n, Ex. 109 ("Spartin Grand Jury Testimony") at DOJ28 000192. It would defy logic to conclude that the act of showing Spartin the other witnesses' grand jury statements in October 1986 caused Spartin to state that the plaintiff knew of the conspiracy during his grand jury testimony in September 1987, but *not* during his polygraph examination in December 1986.[7] Therefore, the plaintiff's argument that the Inspectors' violation of the secrecy

---

[7] Although the plaintiff provides no evidentiary support to reasonably link Spartin's testimony to the Inspectors' violation of the grand jury secrecy rules, the testimony itself provides an explanation of the reasons behind Spartin's opinion that the plaintiff was aware of the conspiracy. After Spartin testified that in his opinion, "[the plaintiff] and Reedy did know that Voss was receiving money from Gnau relative to the [USPS contract]," the prosecutor asked Spartin, "what do you base [your opinion] on? Why do you have that recollection and that understanding? Who did what, said what? What factual events do you base that on?" Pl.'s Opp'n, Ex. 109 at DOJ 000192-000193. Spartin then explained the basis for his belief that REI was aware of the scheme between Voss and GAI. He made no mention of having viewed other witnesses' grand jury testimony. *See id*. at DOJ 000193-000195.

rules "tainted" Spartin's grand jury testimony by causing him to state a "phony opinion" necessarily fails. Whatever the reason for the apparent change in Spartin's opinion between December 1986 and September 1987, the plaintiff offers no evidence – only conclusory allegations – that the opinion Spartin offered at the grand jury hearing was swayed by the Inspectors' violation of the secrecy rules. *See Greene*, 164 F.3d at 675 (holding that unsubstantiated representations will not withstand summary judgment).

Because the plaintiff has presented no evidence that causes the court to question the validity of the grand jury proceeding, the indictment conclusively establishes that the government had probable cause to bring the charges against him. And because absence of probable cause is an element of both the plaintiff's *Bivens* retaliatory prosecution claim and his malicious prosecution claim under the FTCA, the court grants the defendants' motion for summary judgment as to both claims.

### IV.  CONCLUSION

For the foregoing reasons, the court grants the defendants' motion for summary judgment. An order consistent with this Memorandum Opinion is separately and contemporaneously issued this 6th day of August, 2008.

RICARDO M. URBINA  
United States District Judge