UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| WILLIAM G. MOORE, JR., | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 92-2288 (RMU) |
| | : | | |
| v. | : | Re Document No.: | 352 |
| | : | | |
| MICHAEL HARTMAN *et al.*, | : | | |
| | : | | |
| Defendants. | : | | |

## MEMORANDUM OPINION

### DENYING THE DEFENDANTS' RENEWED MOTION FOR SUMMARY JUDGMENT

### I. INTRODUCTION

This matter comes before the court on the defendants' renewed motion for summary judgment. The plaintiff commenced this action nearly twenty years ago, alleging that inspectors employed by the United States Postal Service ("USPS") violated his First Amendment rights by inducing the United States Attorney's Office to bring criminal charges against him in retaliation for speaking out against USPS policies. In addition, the plaintiff brings an action under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b)(1), 2671-2680, alleging malicious prosecution. The defendants – the United States and five postal inspectors – move for summary judgment, asserting that the plaintiff cannot establish that the government lacked probable cause to prosecute him, as he must to prevail on his claims. The plaintiff opposes the motion, contending that a reasonable factfinder could conclude that there was no probable cause to prosecute him. Because the court concludes that there is a genuine issue of material fact as to whether the government lacked probable cause to prosecute him, the court denies the defendants' renewed motion for summary judgment.

## II. BACKGROUND[1]

### A. Factual History

The factual history of this case dates back to the mid-1980s, when the plaintiff served as President and Chief Executive Officer of Recognition Equipment, Inc. ("REI"), a company specializing in optical scanning technology. *Moore v. Hartman*, 571 F.3d 62, 64 (D.C. Cir. 2009). REI urged the USPS to purchase REI's multi-line optical character readers ("MLOCRs"), devices capable of mechanically interpreting multiple lines of text on a piece of mail. *Id.* Many individuals within the USPS advocated for the use of MLOCRs, while many others advocated adding another four digits to the existing five-digit zip codes, which would have required the use of scanners capable of scanning only one line of text on a piece of mail (single-line optical character readers, or "SLOCRs"). *Id.* The plaintiff was heavily involved in the debate over MLOCRs versus SLOCRs, launching an intensive media and lobbying campaign in support of MLOCRs. *Id.* The campaign was successful: after several members of Congress endorsed the use of MLOCRs, the USPS Board of Governors reversed its initial position favoring the use of SLOCRs and instead voted in favor of using MLOCRs. *Id.*

Shortly thereafter, the defendants, postal inspectors for the USPS, commenced an investigation into the activities of the plaintiff and others, whom the inspectors suspected were engaged in a scheme to defraud the USPS. *Id.* Specifically, the investigation was focused on Peter Voss, a member of the USPS Board of Governors; REI; and Gnau & Associates, Inc. ("GAI"), a consulting firm that REI had hired on Voss's recommendation. *Id.* Through their

---

[1] The factual and procedural history of this case has been set forth in more detail in numerous prior opinions. *See, e.g.*, *Hartman v. Moore*, 547 U.S. 250, 252-55 (2006); *Moore v. United States*, 213 F.3d 705, 706-09 (D.C. Cir. 2000); *Moore v. Valder*, 65 F.3d 189, 191-92 (D.C. Cir. 1996); *Moore v. Hartman*, 569 F. Supp. 2d 133, 135-36 (D.D.C. 2008).

investigation, the postal inspectors learned that Voss was receiving illegal payments from John Gnau, the chairman of GAI. *Id.* The payments were made to compensate Voss for referring REI to GAI. *Id.* Voss, Gnau and another GAI official, Michael Marcus, ultimately pleaded guilty for their involvement in the conspiracy, and a third GAI official, William Spartin, entered into a cooperation agreement with the government. *See United States v. Recognition Equip., Inc.*, 725 F. Supp. 587, 589 (D.D.C. 1989).

In October 1988, a grand jury returned an indictment against the plaintiff, REI and REI's vice president, charging them with conspiracy to defraud the United States, theft, receiving stolen property and mail and wire fraud. *Id.* at 587. The matter proceeded to trial, but at the close of the government's case, the court granted the plaintiff's motion for judgment of acquittal, ruling that there was insufficient evidence for the jury to find beyond a reasonable doubt that the plaintiff was aware of the conspiracy. *Id.* at 602.

## B. Procedural History

Following his acquittal in the criminal case, the plaintiff brought a civil suit against the postal inspectors and the Assistant United States Attorney who had prosecuted the case, contending that the inspectors had induced his prosecution in retaliation for his criticism of the USPS. *See generally* Compl. After nearly two decades of litigation that, as the Supreme Court has noted, "portend[s] another *Jarndyce v. Jarndyce*," *Hartman v. Moore*, 547 U.S. 250, 256 (2006), two claims out of the original five remain: a *Bivens*[2] claim alleging that the postal inspectors committed retaliatory prosecution in violation of the plaintiff's First Amendment rights, and a malicious prosecution claim against the inspectors brought under the FTCA.

---

[2] *See Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971).

*Moore*, 571 F.3d at 63.

In 2003, the court[3] denied the defendants' motion for summary judgment on the plaintiff's *Bivens* retaliatory prosecution claim. *See* Order (Aug. 5, 2003). The Circuit affirmed, concluding that a reasonable jury could find that the criminal case against the plaintiff would not have been brought absent the defendants' retaliatory motive. *See generally Moore v. Hartman*, 388 F.3d 871 (D.C. Cir. 2004). The Supreme Court reversed, resolving a Circuit split and holding that to prevail on his *Bivens* retaliatory prosecution claim, the plaintiff would be required to prove not only that the defendants possessed retaliatory motive, but also that the prosecutor lacked probable cause to bring the charges against the plaintiff. *Hartman*, 547 U.S. at 265-66. Because the Supreme Court decision established that probable cause is "a decisive element of the plaintiff's claims," Mem. Op. (Mar. 27, 2007) at 6, and because the plaintiff bears the burden of proving its absence, the court denied without prejudice the defendants' renewed motion for summary judgment and granted the plaintiffs' motion for additional discovery, *see generally id.*

Following the additional period of discovery, the defendants again moved for summary judgment, arguing that the plaintiff cannot prevail on either of his remaining claims because he is unable to show an absence of probable cause. *See generally* Defs.' Mot. for Summ. J. (Oct. 15, 2007). In an August 2008 opinion, the court granted the defendants' motion, holding that "[a] valid indictment conclusively determines the existence of probable cause to bring charges" unless the plaintiff "allege[s] misconduct or irregularities in the grand jury proceeding sufficient to call into question the validity of the indictment," Mem. Op. (Aug. 8, 2008) at 6-7, and concluding that the plaintiff had failed to satisfy the heavy burden of overcoming the conclusive

---

[3] This case was originally assigned to another judge in this court.

effect of the indictment, *see generally id.*

The plaintiff appealed, and in July 2009 the Circuit reversed the court's grant of summary judgment, defining for the first time "what presumption a grand jury indictment is afforded in a *Bivens* retaliatory prosecution claim." *Moore*, 571 F.3d at 67. The Circuit held that "a grand jury indictment is prima facie evidence of probable cause which may be rebutted," *id.*, by "evidence that the indictment was produced by fraud, corruption, perjury, fabricated evidence, or other wrongful conduct undertaken in bad faith," *id.* at 69.

Following remand, the defendants filed this renewed motion for summary judgment, contending that both of the plaintiff's remaining claims fail even under this newly articulated standard. *See generally* Defs.' Renewed Mot. for Summ. J. ("Defs.' Mot."). The plaintiff opposes the defendants' motion. *See generally* Pl.'s Opp'n. With the defendants' renewed motion now ripe for adjudication, the court turns to the applicable legal standard and the parties' arguments.

## III. ANALYSIS

### A. Legal Standard for a Motion for Summary Judgment

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Diamond v. Atwood*, 43 F.3d 1538, 1540 (D.C. Cir. 1995). To determine which facts are "material," a court must look to the substantive law on which each claim rests. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A

"genuine issue" is one whose resolution could establish an element of a claim or defense and, therefore, affect the outcome of the action. *Celotex*, 477 U.S. at 322; *Anderson*, 477 U.S. at 248.

In ruling on a motion for summary judgment, the court must draw all justifiable inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true. *Anderson*, 477 U.S. at 255. A nonmoving party, however, must establish more than "the mere existence of a scintilla of evidence" in support of its position. *Id.* at 252. To prevail on a motion for summary judgment, the moving party must show that the nonmoving party "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. By pointing to the absence of evidence proffered by the nonmoving party, a moving party may succeed on summary judgment. *Id.*

The nonmoving party may defeat summary judgment through factual representations made in a sworn affidavit if he "support[s] his allegations . . . with facts in the record," *Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999) (quoting *Harding v. Gray*, 9 F.3d 150, 154 (D.C. Cir. 1993)), or provides "direct testimonial evidence," *Arrington v. United States*, 473 F.3d 329, 338 (D.C. Cir. 2006). Indeed, for the court to accept anything less "would defeat the central purpose of the summary judgment device, which is to weed out those cases insufficiently meritorious to warrant the expense of a jury trial." *Greene*, 164 F.3d at 675.

**B. The Court Denies the Defendants' Renewed Motion for Summary Judgment**

In support of their renewed motion for summary judgment, the defendants assert that even though the Circuit held that an indictment does not provide *conclusive* evidence of probable cause, "it follows logically from this Court's prior review of [the plaintiff's] allegations and

evidence that he cannot rebut the probable cause presumption" created by the indictment. Defs.' Mot. at 1. More specifically, the defendants argue that there is no evidence that the allegedly improper conduct of the postal inspectors and the Assistant United States Attorney resulted in the grand jury indictment. *Id.* at 10-22. And even assuming *arguendo* that the defendants are not entitled to a *presumption* of probable cause, they contend, the plaintiff's claims must fail because probable cause existed to prosecute him. *Id.* at 22-29. The plaintiff responds that the defendants "fail[ed] to make a complete and full statement of facts to the grand jury" and improperly disclosed grand jury witnesses' testimony, thereby engaging in "wrongful conduct" that, pursuant to the rule recently established in this Circuit, rebuts the presumption of probable cause created by the indictment. Pl.'s Opp'n at 18-32.

In its July 2009 decision in this case, the Circuit established that "to carry his burden [the plaintiff] must present evidence that the indictment was produced by fraud, corruption, perjury, fabricated evidence, or other wrongful conduct undertaken in bad faith." *Moore*, 571 F.3d at 69. Because this Circuit has not yet had the opportunity to draw the contours of this standard, the court is guided by the authority of other Circuits whose decision this Circuit cited favorably in *Moore*. In *Rothstein v. Carriere*, for instance, the Second Circuit held that the presumption of probable cause created by the indictment may be overcome by evidence that the government did "not ma[k]e a complete and full statement of facts either to the Grand Jury or to the District Attorney, that they have misrepresented or falsified evidence, that they have withheld evidence or otherwise acted in bad faith." 373 F.3d 275, 283 (2d Cir. 2004); *accord White v. Frank*, 855 F.2d 956, 961-62 (2d Cir. 1988). Similarly, in *Hand v. Gary*, the Fifth Circuit held that "the finding of probable cause [can be] tainted by the malicious actions of . . . government officials,"

7

838 F.2d 1420, 1426 (5th Cir. 1988), such as the use of "extreme methods" to extract evidence from witnesses, the lack of any basis for the initial investigation, the investigator's personal interest in the prosecution and other indicia of bad faith, *see id.* at 1425; *see also Gonzalez Rucci v. U.S. Immigration & Naturalization Serv.*, 405 F.3d 45, 49 (1st Cir. 2005) (holding that "a grand jury indictment definitively establishes probable cause" unless "law enforcement defendants wrongfully obtained the indictment by knowingly presenting false testimony to the grand jury"); *Riley v. City of Montgomery, Ala.*, 104 F.3d 1247, 1254 (11th Cir. 1997) (noting that "[a] grand jury indictment is prima facie evidence of probable cause which can be overcome by showing that it was induced by misconduct"); *Rose v. Bartle*, 871 F.2d 331, 353 (3d Cir. 1989) (holding that "a grand jury indictment or presentment constitutes prima facie evidence of probable cause to prosecute, but . . . this prima facie evidence may be rebutted by evidence that the [indictment or] presentment was procured by fraud, perjury or other corrupt means").

With this standard in mind, the court turns to an examination of the evidence proffered by the plaintiff. The Circuit summarized this evidence as follows:

> [The plaintiff] assert[s] that he ha[s] shown a lack of probable cause, and point[s] to a number of facts to support his argument. First, the prosecutor made statements to grand jury witnesses to "not reveal" certain portions of their testimony to the grand jury. Second, senior attorneys in the U.S. Attorney's Office allegedly stated in memoranda that the government's evidence against [the plaintiff] was "extremely thin," and openly questioned whether charges should be brought against [him]. Third, the postal inspectors stated in a memorandum after the grand jury investigation that witnesses could testify that [the plaintiff] was not aware of the conspiracy. Finally, the postal inspectors improperly showed GAI Officer Spartin other witnesses' grand jury statements, intimidated Spartin by threatening to prosecute his son and tearing up his plea agreement, and lobbied the U.S. Attorney's Office to prosecute [the plaintiff].

*Moore*, 571 F.3d at 65.

Based on this evidence, a reasonable factfinder could conclude that the government

8

procured the plaintiff's indictment through "wrongful conduct undertaken in bad faith" and that the government lacked probable cause to prosecute the plaintiff. *See Zahrey v. New York*, 2009 WL 54495, at *10-11 (S.D.N.Y. Jan. 7, 2009) (denying the defendants' motion for summary judgment after concluding that a reasonable jury could determine that the defendants acted in bad faith by coercing an unreliable witness into implicating the plaintiff); *Manganiello v. Agostini*, 2008 WL 5159776, at *2 (S.D.N.Y. Dec. 9, 2008) (holding that the plaintiff had provided sufficient evidence for a reasonable jury to conclude that the defendants failed to investigate or inform the District Attorney of potentially exculpatory leads, created a detective report describing the plaintiff's actions that contradicted another detective's report created two weeks earlier, induced inculpatory testimony from unreliable third-party witnesses and misrepresented evidence before the grand jury, and thereby "failed to make a complete and full statement of facts to the District Attorney, misrepresented or falsified evidence, withheld evidence or otherwise acted in bad faith") (internal quotation marks omitted); *Cipolla v. Rensselaer*, 129 F. Supp. 2d 436, 455 (N.D.N.Y. 2001) (holding that a reasonable jury could conclude that the government officials testified falsely before the grand jury, asked potential witnesses to testify falsely, chose not to call a witness who would not testify falsely, circumscribed witness testimony and tampered with evidence); *Gallo v. Philadelphia*, 1999 WL 1212192, at *4 (E.D. Pa. Dec. 17, 1999) (denying the defendants' motion for summary judgment and noting that the court "cannot properly calculate probable cause . . . by merely 'subtracting' the allegedly corrupted testimony from the totality of the Government's case"). Accordingly, the court denies the defendants' renewed motion for summary judgment and directs the parties to file a joint status report on or before August 23, 2010, that includes a joint proposal as to how this matter should proceed.

## IV.  CONCLUSION

For the foregoing reasons, the court denies the defendants' renewed motion for summary judgment.  An Order consistent with this Memorandum Opinion is separately and contemporaneously issued this 12th day of August, 2010.

RICARDO M. URBINA  
United States District Judge