UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| WILLIAM G. MOORE, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 92-2288 (BAH) |
| v. | ) | (Consolidated with Civil Action |
| | ) | No. 93-0324 (BAH)) |
| | ) | |
| MICHAEL HARTMAN, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |
| WILLIAM G. MOORE, JR., | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 93-0324 (BAH) |
| | ) | (Consolidated with Civil Action |
| v. | ) | No. 92-2288 (BAH)) |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS'
MOTION TO VACATE PRETRIAL RULINGS**

At the pretrial conference on May 29, 2014, the Court made five rulings in open court, and also granted Plaintiff's oral motion for recusal following Judge Jackson's disclosure of facts potentially "relat[ing] to [her] fitness to hear the case." Ex. A (Tr. of Pretrial Conference, May 29, 2014) at 63; *see also* Order, May 30, 2014 (Dkt. No. 452).[1]  Judge Jackson refused to vacate

---

[1] The five rulings (i) allowed Plaintiff to add Peter Voss to his witness list and permitted Plaintiff to take Mr. Voss's deposition *de bene esse* upon submission of information substantiating his inability to appear at trial; (ii) directed the parties to confer on agreed *voir dire* questions; (iii) ruled inadmissible in Plaintiff's case in chief evidence of statements made by Joseph Valder to William Hittinger; (iv) denied Defendants' motion to quash the trial subpoena served on Guy Cottrell, while excluding certain testimony by Mr. Cottrell; and (v) and overruled objections to Plaintiff's witnesses Stillman, Bennett and Kearney. Order, May 30, 2014.

these pretrial rulings after granting the recusal motion, observing that the basis for her recusal does not change "anything I've decided prior to this [point]," and "it's a waste of everyone's time to reargue everything to the next [judge]." Ex. A at 81. Nevertheless, Defendants—who opposed the recusal motion because they believed there was no basis for recusal—have now moved to vacate these five pretrial rulings on the putative grounds of "good sense and sound judicial administration." Mot. to Vacate ¶ 9. Plaintiff opposes this motion in part: Judge Jackson's pretrial rulings should be kept in place, subject only to any particularized motions for reconsideration that the parties may file establishing that either (i) a specific ruling was "tainted" by the bias or appearance of bias that was the basis for Judge Jackson's recusal (as read into the record, *see* Ex. A at 69–75) or (ii) reversal of a ruling is warranted under the usual standards governing reconsideration—clear error of law, change in law, discovery of new evidence—and not simply because the Court now disagrees with Judge Jackson's discretionary judgment calls.

1.  The law does not justify the automatic wholesale vacatur of all prior orders when a judge is recused from a case. "[T]he general rule [is] that the recused judge should take no *further* action except to enable administrative reassignment of the case." *El Fenix de P.R. v. The M/Y Johanny*, 36 F.3d 136, 142 (1st Cir. 1994) (emphasis in original). "[N]othing in the language or history of section 455(a) suggests that the statute affects the validity of orders the judge made before [s]he recused [her]self." *Russell v. Lane*, 890 F.2d 947 (7th Cir. 1989) (Posner, J.). "Although § 455 defines the circumstances that mandate disqualification of federal judges, it neither prescribes nor prohibits any particular remedy for a violation of that duty." *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 862 (1988). "[I]n complex litigation, vacatur of [prior] rulings ought to be as limited as possible," *In re Sch. Asbestos Litig.*, 977 F.2d 764 (3d Cir. 1992), and should occur only after considering "[(1)] the risk of injustice to the

parties in the particular case, [(2)] the risk that the denial of relief will produce injustice in other cases, and [(3)] the risk of undermining the public's confidence in the judicial process." *Liljeberg,* 486 U.S. at 864; *see also El Fenix de P.R.*, 36 F.3d at 142 ("Both the need for finality and a common-sense aversion to frittering scarce judicial resources militate against an inflexible rule invalidating all prior actions of a judge disqualified under § 455(a).").[2]

    Consistent with the Supreme Court's instruction, there is no "risk of injustice" to Defendants by keeping these rulings intact, and Defendants should be foreclosed from saying otherwise.  It was *Plaintiff* who moved for Judge Jackson's recusal on the basis of her prior involvement with individuals from the United States' Attorney's Office, a number of whom are listed as witnesses.  *See* Mot ¶ 3; Ex. A at 75–77.  Defendants opposed recusal in open court (*see* Mot ¶ 3), because they believed Judge Jackson could "view and rule on the case independently." Ex. A at 78.  They continue to suggest that recusal was not "in order" under the circumstances (Mot ¶ 5), but in the same breath espouse their entitlement to "a neutral and detached judge" (*id.* ¶ 6).  "A party should not be permitted 'to blow hot and cold' in this way."  *Ohler v. United States*, 529 U.S. 753, 762 (2000) (Souter, dissenting); *see also Viereck v. United States*, 139 F.2d 847, 851 (D.C. Cir. 1944) (a party "cannot blow hot and cold, he cannot ride both sides of the sapling").  Either Judge Jackson's basis for recusal tainted her view of the case, or it did not— Defendants cannot say the latter, but then assert prejudice resulting from the former.  *See United States v. Microsoft Corp.*, 253 F.3d 34, 116 (D.C. Cir. 2001) (denying full retroactive vacatur

---

[2] Despite defendants' misleading and selective quotation of *Liljeberg* (Mot. ¶ 7), that decision is not to the contrary.  The Court *did not*, in that case, espouse a general preference for vacatur of a recused judge's prior rulings.  It said only that "after a careful study" of the "*underlying litigation*" vacatur of a final judgment was the appropriate remedy in that case for the judge's "inexcusable failure to disqualify himself" at all.  486 U.S. at 868–69 (emphasis added).

after a judge's recusal where the moving party "neither alleged nor demonstrated … actual bias or prejudice" against it).

Similarly, any perceived threat to the "public[] confidence in the judicial process" is nonexistent. *Liljeberg,* 486 U.S. at 864. This is most obviously so because, again, Defendants continue to maintain that there was no need for Judge Jackson to recuse herself. In addition, most of the rulings Defendants seek to vacate do not implicate in any way the basis for Judge Jackson's recusal. Recusal here was *not* based on a bias or appearance of bias concerning any of *the parties* to this litigation, so there is no risk that Judge Jackson's rulings might be perceived as collectively inuring to the benefit of a favored party. Rather, the recusal was based on a bias or appearance of bias concerning *non-party witnesses*, specifically "information in [Judge Jackson's] head" that "may reflect on the[] credibility [of six witnesses who worked in the United States Attorney's Office], but really more specifically that relates to the quality of their professional judgment in general." Ex. A at 72–73. Most of Judge Jackson's mainly procedural, and largely discretionary rulings—allowing Plaintiff to amend his witness list to include a recently contacted key witness and to proceed with a deposition *de bene esse* of that witness; directing the parties to agree upon a set of *voir dire* questions; denying a motion to quash a trial subpoena directed at a Postal Inspection Service official but limiting the scope of Plaintiff's examination of that witness; and overruling Defendants' objections to three of Plaintiff's witness—do not in any way touch upon the decision-making process inside the U.S. Attorney's Office or the credibility or judgment of the witnesses who worked there.[3]

---

[3] Since being assigned to this matter and before being recused, Judge Jackson issued approximately two dozen orders in this consolidated case, ranging from mere scheduling orders to substantive discovery orders. The five rulings Defendants seek to vacate do not meaningfully differ from any of those other orders—and Defendants have no qualms with any of those others. They chose not to seek vacatur of the order denying Plaintiffs' motion to compel the production

Accordingly, there is no basis for the sort of wholesale vacatur of the prior rulings requested by Defendants.  If a party believe that there are particularized justifications, such as clear errors of law, for reconsidering one of Judge Jackson's rulings, that party should file a motion for reconsideration establishing that reversal of the ruling is warranted.[4]  Indeed, Defendants' motion to vacate seems more like a contrivance for reconsideration of two rulings— relating to Mr. Voss and Mr. Cottrell—that Defendants vigorously opposed, had a full and fair opportunity to litigate, and still had the issues decided against them.

2. Moore notes that one aspect of the motion to vacate is more time sensitive than the others, and that the granting of the motion risks severe prejudice to Plaintiff.  Specifically, the *de bene esse* videotaped deposition of Peter Voss, the former Vice Chairman of the Board of Governors of the U.S. Postal Service and a central figure in the events which eventually led to the indictment of Bill Moore, has been noticed and is scheduled to be conducted at his home in Canton, Ohio, on Thursday, June 12, at 10 a.m.  Mr. Voss has been subpoenaed by Plaintiff.  He is eighty-three years old and has told counsel for Plaintiff that he has had open heart surgery and knee replacement surgery within the last twelve to eighteen months.  He has agreed to allow the deposition in his home because he says travel is extremely difficult for him.

---

(continued…)

of Postal Inspection training manuals and internal policies (*see* Minute Order re: Dkt. No. 442, May 21, 2014), or the order denying Plaintiff's request to use a pre-*voir dire* juror questionnaire (*see* Minute Order re: Dkt. No. 443, May 21, 2014.)  Nor would they have had any basis for doing so; like most of the five rulings under review, those orders do not relate to the bias or appearance of bias that formed the basis for Judge Jackson's recusal.

[4] Consistent with this position, Moore will file contemporaneously herewith a motion for reconsideration of one such ruling, *viz.*, the order excluding the affidavit and deposition testimony of William Hittinger.  Reconsideration of that order is justified because it directly conflicts with a prior, binding D.C. Circuit ruling in this case that Judge Jackson appears to have overlooked, *see Moore v. Valder*, 65 F.3d 189 (D.C. Cir. 1995), and, unlike the Court's other rulings, it is inextricably intertwined with the basis for Judge Jackson's recusal.

Plaintiff filed a notice of an amendment adding Voss's name to the witness list contained in the joint pre-trial statement on May 27, 2014, because counsel had not been successful in contacting Mr. Voss before the joint pre-trial statement was filed.  Counsel for Plaintiff first met and spoke with Mr. Voss on May 24, 2014.  Defendants sought to keep Mr. Voss from being deposed and added to the witness list.  This matter was argued to Judge Jackson on May 29, 2014, and she properly overruled Defendants' objections to the amendment of the witness list and the taking of Mr. Voss's deposition.  Judge Jackson correctly recognized that there would be absolutely no prejudice to Defendants since they have extensive knowledge of what Voss has said[5] and they themselves had listed as trial exhibits documents from the interviews they conducted with Mr. Voss as well as other documents from, to or relating to Mr. Voss.  *See* Ex. A at 19–20 ("[T]he one thing you haven't pointed to … is how ultimately you're really harmed by this.  I don't really see how you can be harmed by putting in live testimony of somebody that you're already trying to put in their testimony.").

Plaintiff believes that in view of Mr. Voss's age and health, and the unquantifiable risk that this important testimony could be irretrievably lost, the deposition should go forward on June 12.  That date was selected to replace the previously scheduled date of June 6 after Defendants' counsel indicated that June 12 is a date available to them.  And, in view of the

---

[5] Mr. Voss entered into a plea agreement in May 1986 and agreed to cooperate in the further investigation and legal proceedings relating to the illegal financial scheme he had with the consulting firm, Gnau & Associates.  He was incarcerated for several years.  Postal Service Inspectors, including certain of the defendants, and former Assistant U.S. Attorney Joseph Valder conducted multiple days of interviews of Mr. Voss before and after his plea agreement and sentencing.  Pursuant to his plea agreement and cooperation agreement, they thus have had vast opportunities to cover all relevant matters with him, and they prepared lengthy notes of his interviews and a lengthy summary statement which was read to the grand jury and constituted the majority of his testimony to the grand jury.  Mr. Voss was listed as a trial witness for the United States at the criminal trial of Mr. Moore but the United States did not call him to testify.

movement of the trial date and the vast resources of the Justice Department, there is no credible argument that taking a deposition in Canton, Ohio, would interfere with any trial preparation. Plaintiff has described this issue here in an effort to have the Court fully understand that a grant of Defendants' motion to vacate would risk severely prejudicing Plaintiff as to the impending Voss deposition.

## CONCLUSION

For the foregoing reasons, the Court should deny the motion for wholesale vacatur of Judge Jackson's pretrial rulings, and consider any motions for reconsideration on their independent merits.

Dated: June 4, 2014

Respectfully submitted,

/s/ Christian G. Vergonis

| | |
|---|---|
| Amy E. Dias (D.C. Bar No. 1002623) | Paul M. Pohl (admitted *pro hac vice*) |
| Henry W. Asbill (D.C. Bar No. 938811) | JONES DAY |
| Christian G. Vergonis (D.C. Bar No. 483293) | One Mellon Bank Center |
| Charles T. Kotuby, Jr. (D.C. Bar No. 492416) | 500 Grant Street, Suite 4500 |
| JONES DAY | Pittsburgh, PA 15219 |
| 51 Louisiana Avenue, N.W. | (T) 412.391.3939 |
| Washington, D.C. 20001 | (F) 412.394.7959 |
| (T) 202.879.3939 | |
| (F) 202.626.1700 | Richard H. Deane Jr. (admitted *pro hac vice*) |
| | JONES DAY |
| | 1420 Peachtree Street, N.E. |
| | Suite 800 |
| | Atlanta, Georgia 30309-3053 |
| | (T) 404.581.8502 |
| | (F) 404.581.8330 |
| | |
| | *Attorneys for Plaintiff* |