UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| WILLIAM G. MOORE, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 92-2288 (BAH) |
| v. | ) | (Consolidated with Civil Action |
| | ) | No. 93-0324 (BAH)) |
| | ) | |
| MICHAEL HARTMAN, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| _____ | ) | |
| | ) | |
| WILLIAM G. MOORE, JR., | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 93-0324 (BAH) |
| | ) | (Consolidated with Civil Action |
| v. | ) | No. 92-2288 (BAH)) |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**PLAINTIFF'S MOTION FOR RECONSIDERATION OF
EXCLUSION OF HITTINGER EVIDENCE**

Plaintiff Bill Moore respectfully moves for reconsideration of the Court's order excluding

the sworn testimony and affidavit of William Hittinger on the grounds, *inter alia*, that the order

conflicts with the law of the case as established by the D.C. Circuit in *Moore v. Valder*, 65 F.3d

189 (D.C. Cir. 1995) ("*Moore I*").[1]

**STATEMENT OF POINTS AND AUTHORITIES**

Mr. Hittinger is an unavailable (because deceased) witness who previously testified under

_____

[1] Counsel for Moore has discussed this motion with counsel for Defendants, who state
that they have moved to vacate all rulings made by Judge Jackson at the May 29, 2014 pretrial
conference and do not believe that piecemeal reconsideration is appropriate.

oath that the lead prosecutor, Assistant U.S. Attorney Joseph Valder, told Hittinger—during the criminal investigation at issue here and in the presence of defendants Hartman and Kormann, who did not repudiate Valder's comments—that he (Valder) was unconcerned with the merits of the criminal case against Moore, but wanted to win the case to advance his career.

The Court's relevance-related exclusion of Hittinger's sworn account directly conflicts with a binding D.C. Circuit ruling in this case that this Court appears to have overlooked, possibly as a result of Defendants' miscitation of overruled authority. Specifically, Judge Jackson's ruling—which was premised on her conclusion that "what Mr. Valder said doesn't have anything to do with the [defendant] agent's retaliatory animus" (Tr. of Pretrial Conference (Ex. E hereto) at 34–35)—directly conflicts with the D.C. Circuit's holding in this case that Hittinger's account is "direct evidence" of the unconstitutional retaliatory motives of the individual defendants. *Moore v. Valder*, 65 F.3d 189, 196 (D.C. Cir. 1995) ("*Moore I*"). On this point, *Moore I* reversed a ruling of this Court that had dismissed Moore's complaint on the same ground that formed the basis for Judge Jackson's ruling, *i.e.*, that Hittinger's account "provides no evidence of the Inspectors' intent." *Moore v. Hartman*, 1993 WL 405785, at *5 (D.D.C. Sept. 24, 1993), *rev'd, Moore I*, 65 F.3d 189. Particularly troublesome in this regard is the very real possibility that Judge Jackson's error was induced by Defendants' misleading citation and quotation of this overturned district court ruling, and their inexplicable failure to note that the ruling was reversed on appeal. *See* Def. Mem. Supp. Mot. Limine (Dkt. No. 419) at 17.

This Court of course has the power to reconsider and correct errors in its prior rulings. And while reassignment of a case to a new judge should not license wholesale reopening of the prior judge's rulings, *see* Opp'n to Mot. Vacate, neither should it prevent the Court from correcting serious legal error by the prior judge—such as direct conflict with a Court of Appeals

ruling that constitutes binding law of the case.  If anything, the circumstances of Judge Jackson's

recusal make reconsideration of this specific ruling particularly appropriate.

## BACKGROUND

In 1987 and 1988, William Hittinger, a member of REI's board of directors who

subsequently became the president of Lehigh University, testified before the grand jury that later

indicted Moore.  A few years later, in 1992, Hittinger submitted an affidavit (Ex. A hereto) in

this lawsuit.  Hittinger swore that on the day of his testimony before the grand jury, he "had

lunch with Assistant U.S. Attorney Joseph Valder and two men whom I understood to be postal

inspectors assisting Mr. Valder in the investigation."  *Id.* at 3.  Discovery in this case revealed

that the two postal inspectors were defendants Hartman and Kormann.  *See* Kormann Dep. at

329–33 (Ex. B hereto).

According to Hittinger, during that lunch, "Mr. Valder stated in substance that the merits

of the case or whether the persons involved were guilty or not did not concern him," but rather

"it was important to him that he win the case because he wanted to get a track record or some

notoriety which would help him obtain a good position in private practice."  *Id.*  Hittinger further

attested that Valder did not "seem to be interested in fairly assessing the merits of the case," and

that the comments were so upsetting that Hittinger "later reported the conversation to company

counsel."  *Id.*  When deposed in this case in 1999, Hittinger confirmed that Valder had said at the

lunch with the postal inspectors that "he was less interested in the merits of the case than in

winning the case."  Hittinger Dep. at 25 (Ex. C hereto).  In response to Valder's comments, the

postal inspectors "were silent partners" (*id.* at 27) and made "no comment" (*id.* at 28).

Defendants exercised the opportunity to cross-examine Hittinger about this incident

during his deposition.  *Id.* at 38–56.  Among other things, they marked his affidavit as an exhibit

(*id.* at 39–40) and questioned him about it (*id.* at 47–51).  Valder admitted at his own deposition

to making the statements at issue, albeit placing a putatively benign spin on what he had meant. *See* Valder Dep. at 177–83 (Ex. D hereto).

Moore submitted the Hittinger affidavit to this Court in opposition to Defendants' efforts to dismiss Moore's complaint for failure to state a claim. This Court found the affidavit irrelevant to Moore's allegations of retaliatory motive on the part of the individual defendants and accordingly dismissed the complaint. But the D.C. Circuit reversed, holding that the affidavit is "direct evidence" of the individual defendants' retaliatory motives. *See infra* pp. 6–7.

William Hittinger passed away last year.[2] In March, Defendants moved to exclude Hittinger's affidavit and deposition testimony on the grounds of relevance, prejudice and hearsay. The Court addressed Defendants' objections to the Hittinger evidence at the final pretrial conference on May 29, 2014. In doing so, the Court asserted repeatedly, and in direct conflict with the D.C. Circuit's holding in *Moore I*, that the evidence was not probative of the inspectors' own intent, motives and state of mind. *See* Tr. at 34–35 ("what Mr. Valder said doesn't have anything to do with the agent's retaliatory animus"); *id.* at 35 ( "I'm not sure that the agent's silence in the face of what this has been described is -- so clearly indicates anything as to their state of mind."); *id.* ("I believe that you can't attribute this to these defendants because their silence is ambiguous."). For this reason, the Court "d[id not] believe [the statements] are relevant," but rather deemed them "collateral to what we have to do here." *Id.* at 36; *see also id.* at 39 ("I don't find it relevant."). And, given this dim view of the evidence's relevance, the Court had no trouble concluding that, "[t]o the extent it is relevant, I find that the prejudicial

---

[2] *See Obituary*, *The Morning Call*, at http://www.legacy.com/obituaries/mcall/obituary.aspx?pid=163743837.

value and the collateral nature of it outweighs the probative value." *Id.* at 39.  The Court

accordingly excluded the evidence from Moore's case in chief.  *Id.*

**ARGUMENT**

A district court should grant a motion to reconsider if necessary to "correct a clear legal

error or prevent manifest injustice." *Ciralsky v. CIA*, 355 F.3d 661, 671 (D.C. Cir. 2004).  Those

circumstances unquestionably exist here.

This Court's ruling excluding as irrelevant and collateral Hittinger's eyewitness account

of Valder's reprehensible statements and the postal inspectors' reaction thereto conflicts with the

D.C. Circuit's prior, binding holding in *Moore I* that Hittinger's account is "direct evidence" of

Defendants' unconstitutional retaliatory motive.  *See infra* Part I.  Particularly troublesome in

this regard is that the Court's ruling not only overlooked *Moore I*, but may have been induced by

Defendants' misleading citation of the district court opinion that *Moore I* overruled.  *See id.*  By

any measure, the Hittinger evidence is probative of several core disputed issues of fact, and not

all unfairly prejudicial.  *See infra* Part II.  Were that not enough to warrant the Court's

reconsideration of the ruling, the circumstances surrounding Judge Jackson's recusal

independently require *de novo* reconsideration of the matter.  *See infra* Part III.  Finally, contrary

to Defendants' contentions, the Hittinger evidence is not inadmissible hearsay (a question that

the Court's ruling did not reach).  *See infra* Part IV.

## I.   THE COURT OVERLOOKED THE D.C. CIRCUIT'S BINDING RULING THAT HITTINGER'S ACCOUNT IS "DIRECT EVIDENCE" OF DEFENDANTS' RETALIATORY INTENT

Reconsideration of the ruling excluding Hittinger's statements is warranted because that

ruling conflicts with the D.C. Circuit's prior, binding holding in *Moore I* that Hittinger's

statements are "direct evidence" of the very wrongdoing on which Moore's *Bivens* claim is

premised:  Defendants' unconstitutional retaliatory motive.  This Court's ruling not only

5

overlooked *Moore I*, which alone justifies reconsideration, but may have been induced by Defendants' miscitation of the district court opinion that *Moore I* reversed.

*Moore I* involved (among other things) the sufficiency of the allegations of retaliatory motive contained in Moore's complaint. At the time—though no longer, *see Crawford-El v. Britton*, 523 U.S. 574 (1998) (rejecting D.C. Circuit's standard)—courts in this Circuit applied a heightened standard of "direct evidence" to claims of motive-based misconduct by government officials. Under that standard, circumstantial evidence of an improper motive was insufficient to support a claim; a plaintiff was required to allege "direct" evidence to survive a motion to dismiss, and to produce such evidence to survive a motion for summary judgment. *See, e.g.*, *Kimberlin v. Quinlan*, 6 F. 3d 789, 793–94 (D.C. Cir. 1993). Applying that standard to Moore's *Bivens* claims for retaliatory prosecution in violation of the First Amendment, this Court "dismissed Moore's claims against the postal inspectors because Moore's complaint did not allege direct evidence that they acted maliciously or in retaliation for constitutionally protected speech." *Moore I*, 65 F.3d at 195; *see also Moore v. Hartman*, 1993 WL 405785, at *6 (D.D.C. Sept. 24, 1993). In so ruling, this Court considered the Hittinger affidavit, which Moore had submitted in opposition to Defendants' motion to dismiss, *see Moore v. Hartman*, 1993 WL 405785, at *4, and concluded that the affidavit "cannot save Moore's claims against the Inspectors from dismissal for it provides no evidence of the Inspectors' intent. Nothing in the affidavit suggests that the Inspectors shared Valder's alleged motivations." *Id.* at *5.

On appeal, the D.C. Circuit reversed the dismissal and reinstated Moore's *Bivens* claims for retaliatory prosecution. Likewise applying the then-governing "direct evidence" standard, the D.C. Circuit pointed to two pieces of record evidence that "taken together constitute evidence sufficient to meet any applicable heightened pleading standard." *Moore I*, 65 F.3d at 196. The

first was evidence that Moore's public criticisms of the Postal Service "produced hostility in USPS management." *Id.* The second was evidence—specifically, the Hittinger affidavit—that "[t]wo of the [defendant] postal inspectors, who reported to USPS management, heard and did not repudiate Valder's declaration that Moore's innocence was irrelevant to the prosecution he intended to pursue." *Id.*

The D.C. Circuit, in short, held that Hittinger's account is "direct evidence" of Defendants' retaliatory intent. This holding necessarily controls the disposition of any relevance objection to the Hittinger evidence. If, as the D.C. Circuit held, Hittinger's account is "direct evidence" of Defendants' unconstitutional retaliatory motive—sufficient if alleged to survive a motion to dismiss, sufficient if produced to survive a motion for summary judgment, and sufficient if proven to support a jury verdict—then *a fortiori* it is probative of and relevant to that retaliatory motive. In so holding, the D.C. Circuit *rejected* the holding below that the Hittinger affidavit was evidence only of *Valder's own* state of mind. Nevertheless, this *rejected* view was the very basis for this Court's exclusion of the Hittinger evidence. *See* Tr. at 34–35 ("what Mr. Valder said doesn't have anything to do with the agent's retaliatory animus"); *id.* at 35 ( "I'm not sure that the agent's silence in the face of what this has been described is -- so clearly indicates anything as to their state of mind."); *id.* ("I believe that you can't attribute this to these defendants because their silence is ambiguous.").

This alone provides ample reason for revisiting and reversing the Court's order on the Hittinger evidence, but there is a related, additional and compelling reason to do so. Troublesomely, it appears that the Court not only overlooked *Moore I*, but may have been induced by Defendants' misleading citation of the district court ruling that *Moore I* reversed. Specifically, in their opening brief in support of their motion in limine, Defendants rested their

argument that the Hittinger evidence is irrelevant on a quotation from the overturned ruling of this Court that the Hittinger testimony is not direct evidence of the Inspectors' motives because "'[n]othing in the affidavit suggests that the Inspectors shared Valder's alleged motivations.'" Def. Mem. Supp. Mot. Limine (Dkt. No. 419) at 17 (quoting *Moore v. Hartman*, 1993 WL 405785, at *5 (D.D.C. Sept. 24, 1993)). Inexplicably, Defendants failed to note that this decision was reversed on appeal by *Moore I* on this very point, although after Moore pointed that out in his opposition brief, *see* Opp'n Def. Mot. Limine (Dkt. No. 430) at 22, Defendants quietly abandoned their relevance objection, *see* Reply Supp. Def. Mot. Limine (Dkt. No. 432) at 12–15 (arguing that statement should be excluded on grounds of hearsay and unfair prejudice, but no longer mentioning relevance), albeit without correcting the error in their original filing. *Cf. Astro-Med, Inc. v. Plant*, 250 F.R.D. 28, 35 (D.R.I. 2008) ("admonishing … counsel that they have an obligation to correct misstatements in their filings when such misstatements become known to them").

Finally, there is no doubt that *Moore I* also compels reconsideration and reversal of the Court's related ruling that the Hittinger evidence is inadmissible because (according to the Court) its probative value is substantially outweighed by the danger of unfair prejudice. Where an improper motive is an essential element of a plaintiff's claim, it is doubtful that the probative value of direct, non-circumstantial evidence of that motive could ever be substantially outweighed by a danger of unfair prejudice. As the leading federal practice treatise explains, "the calculus of Rule 403 requires that direct evidence receive the highest rating," and "testimonial direct evidence would seldom be excludable under Rule 403." 22A Charles Alan Wright *et al.*, *Federal Practice and Procedure* § 5214 (West 2014); *see also id.* ("it will be impossible for the countervailing factors to 'substantially outweigh' probative worth [of

testimonial direct evidence] without concluding, in effect, that the crime is so horrible or costly to prove that the case cannot be tried").

In any event, because Rule 403 requires a balancing of probative value against the danger of unfair prejudice, this Court's ruling under Rule 403 was necessarily derivative of its legally erroneous view of the evidence's lack of any serious probative value.  *See id.* ("the process of balancing is a prerequisite to the exercise of discretion" in excluding evidence under Rule 403); *id.* ("The inability to articulate the sources of probative worth may lead to an undervaluation of this factor, which is directly contrary to the policy favoring the admissibility of evidence."). Indeed, the Court even expressly incorporated its mistaken impression of the evidence's mere "collateral nature" into its Rule 403 balancing.  Tr. at 36, 39.  At a minimum, therefore, *de novo* reconsideration of the evidence's admissibility under Rule 403 is required, with any danger of unfair prejudice weighed against the evidence's extremely high value as direct, non-circumstantial evidence of Defendants' retaliatory motives.[3]

---

[3] The Court also erred in its apparent misapprehension that Defendants had no opportunity to cross-examine Mr. Hittinger.  *See* Tr. at 36 ("I think the prejudicial value outweighs the probative value, especially since the speaker cannot be cross-examined").  Not only is this evidentiary-weight-related factor an entirely impermissible consideration in a Rule 403 balancing inquiry, *see infra* p. 10 & note 4, but, in fact, as noted above, Defendants *did* cross-examine Mr. Hittinger about these events at his deposition, and even marked his affidavit as an exhibit.  *See supra* p. 3.  Moreover, it is particularly inappropriate to penalize Moore for the inability to present live testimony (Mr. Hittinger is deceased) given that Defendants' abusive litigation tactics are the reason this case has taken so long to get to trial.  *See Moore v. Hartman*, 644 F.3d 415, 427 (D.C. Cir. 2011) (Henderson, J., concurring) ("I write separately to express dismay over the herculean effort the plaintiff has had to expend simply to get his day in court.... To say that this has not been the government's finest hour is a colossal, and lamentable, understatement.").

## II.   THE EVIDENCE IS HIGHLY RELEVANT AND ITS PROBATIVE VALUE IS NOT SUBSTANTIALLY OUTWEIGHED BY ANY DANGER OF UNFAIR PREJUDICE

Even apart from the order's conflict with *Moore I*, reconsideration is warranted because this Court erred as a matter of law by improperly importing credibility and weight determinations—matters appropriately reserved for the jury—into its relevance determination. *See, e.g.*, Tr. at 33–34 ("What Mr. Hittinger says Mr. Valder says, which is … vague, is not that clear."); *id.* at 34 ("[S]ome of this is Mr. Hittinger's interpretation of what Mr. Valder said.  We don't even have a quote of what Mr. Valder said."); *id.* at 39 ("This witness was not clear enough about what Mr. Valder said or he didn't.  His testimony is about the impressions he drew from it.").  These are not relevance factors; they are grist for cross-examination—which, it bears repeating, Defendants conducted during Hittinger's deposition—for counter-testimony from the other witnesses to the event, and for argument by counsel to the jury.  *See, e.g.*, *Ballou v. Henri Studios, Inc.*, 656 F.2d 1147, 1154 (5th Cir. 1981) (overruling district court's exclusion of evidence and remanding for new trial because district court "discount[ed] the probative value of the [evidence] on the basis of its perception of the degree to which the evidence was worthy of belief"); 22A Charles Alan Wright *et al.*, *Federal Practice and Procedure* § 5214 (West 2014).[4]

Properly analyzed, Hittinger's statements are relevant in several respects.  *First*, as discussed above and held by the D.C. Circuit in *Moore I*, the statements are direct evidence of

---

[4] As the Wright & Miller treatise explains, "[i]t is doubts about the ability of the witness to perceive, recollect, and narrate [his] recollections truthfully that detract from the value of testimonial direct evidence.  However, it seems relatively clear that in the weighing process under Rule 403 the judge cannot consider the credibility of witnesses.  In the first place, credibility is a question for the jury; to permit the judge to exclude evidence on the ground that he thinks it incredible would be a remarkable innovation and may even be a violation of the right of trial by jury."  22A Charles Alan Wright *et al.*, *Federal Practice and Procedure* § 5214 (West 2014) (footnotes omitted).

Defendants' own retaliatory intent.  This is because a statement by one individual can be relevant and admissible against "those present who by their silence or other conduct assent to the truth of the declaration."  *Lutwak v. United States*, 344 U.S. 604, 619 (1953).  The Hittinger evidence shows that Valder made his remarks about seeking private reward at the expense of the truth at the time the grand jury proceeding was on-going.  Defendants Hartman and Kormann were participating in the grand-jury proceeding and aiding Valder's presentation of the evidence.  If they had not shared Valder's desire to prosecute Moore irrespective of his guilt, they would not have sat silent (*see* Hittinger Dep. at 27–28), but would have disavowed and repudiated the comments or taken subsequent action against Valder—as Kormann subsequently admitted. Kormann Dep. at 334 ("If a prosecutor were to make such a statement about a case in my presence, or even to express a sentiment like that in my presence, then I would have taken steps to resolve the issue immediately."); *see also United States v. Watson*, No. 12-2218, 2014 U.S. App. LEXIS 1051, at *1 (6th Cir. 2014) (holding statement adopted where innocent defendant would have responded).  The fact that they did not do so is damning direct evidence of their own improper motivations, again, as the D.C. Circuit has already held.

*Second*, the statements are also relevant to the issues of probable cause and grand-jury misconduct.  Specifically, a jury might be disinclined to believe that Defendants could have gotten away with tampering with the grand jury, or succeeded in pushing for the prosecution of a meritless case, if that jury thought a fair-minded prosecutor stood between the Inspectors on the one hand and the grand jury and the U.S. Attorney's Office on the other.  Learning that AUSA Valder was an unabashed careerist who did not care about Moore's guilt or innocence will tend to dispel those doubts about the feasibility of Defendants' scheme.

11

*Third*, to the extent that Defendants want to argue now that the U.S. Attorney's Office did a proper and neutral review of the evidence against Moore prior to the indictment, this evidence shows that the lead prosecutor working on the case in concert with the postal inspectors for several years had an improper agenda of his own, thus undermining any argument about unbiased neutrality.

*Fourth*, that Defendants knew and approved of Valder's bad motives is probative evidence that Valder and the inspectors had agreed to work in concert to wrongly prosecute Moore.  That the inspectors and Valder were acting in concert for an improper end is in turn highly relevant to Moore's claim that, as Valder's co-conspirators, the inspectors are responsible for his improper acts taken in furtherance of the conspiracy.

*Fifth*, evidence of Valder's improper motives directly undermines the credibility of Valder's assertions, including assertions in documents that Defendants are seeking to introduce, that there was probable cause to charge Moore, and that the evidence against Moore was strong.

Given the evidence's extremely high probative value, Defendants' "prejudice" objection must also fail.  As already explained, it is impossible for direct evidence of Defendants' improper and unconstitutional state of mind to be substantially outweighed by other factors.  *See supra* pp. 8–9.  It is certainly not "unfairly" prejudicial for the jury to conclude from the inspectors' acquiescence in Valder's misconduct that the inspectors acted from improper motives of their own—in other words, that the inspectors did exactly what they stand accused of doing.

## III.   SPECIAL CONSIDERATIONS RELATING TO JUDGE JACKSON'S RECUSAL WARRANT RECONSIDERATION OF THIS RULING

A wholly independent reason for reconsideration of the Hittinger order is that, unlike Judge Jackson's other pretrial rulings, the ruling on the Hittinger evidence is inextricably intertwined with the basis for Judge Jackson's recusal.  Judge Jackson recused herself because

she and her former husband worked in the U.S. Attorney's Office and had professional relationships with six of Defendants' witnesses—all former lawyers in that Office. As a result, Judge Jackson previously formed opinions on their "credibility . . . [and] the quality of their professional judgment." Tr. at 72–73. Judge Jackson's ruling on the Hittinger evidence appears to have been premised in part on her skepticism of Moore's contention that the misconduct identified by Hittinger undermined the ability of the U.S. Attorney's Office to act as a check on misconduct by investigators. *See* Tr. at 30–39. In other words, because the Hittinger evidence casts doubt on the integrity and competency of that Office, Judge Jackson's decision to exclude it squarely implicates the reason for her recusal. Allowing the ruling to stand without *de novo* reconsideration by the Court therefore "risk[s] … undermining the public's confidence in the judicial process." *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 862, 864 (1988).

## IV.    THE HITTINGER EVIDENCE IS NOT INADMISSIBLE HEARSAY

Defendants' motion in limine also made a so-called "double hearsay" challenge to the Hittinger evidence, contesting the admissibility of both Hittinger's out-of-court statements and the out-of-court statements by Valder described therein. *See* Fed. R. Evid. 805 (hearsay within hearsay). Because it was premised on Rules 402 and 403, the Court's ruling did not address Defendants' hearsay objection, which will need to be resolved should the Court agree to reconsider that ruling. As to both prongs, Defendants' challenge is meritless.

A.    **Hittinger's Statements.** Because Hittinger is deceased (*see supra* note 2) and hence unavailable as a witness at trial, *see* Fed. R. Evid. 804(a)(4), his *testimony* from his deposition in this case is without question admissible as "former testimony" given at a "lawful deposition," *id.* 804(b)(1)(A), and now "offered against a party who had … an opportunity and similar motive to develop it by direct, cross-, or redirect examination," *id.* 804(b)(1)(B), as Defendants plainly did, *see* Hittinger Dep. at 38–56 (cross-examination by Defendants' counsel).

The testimony is likewise usable for any purpose as the deposition testimony of a deceased witness pursuant to Federal Rule of Civil Procedure 32(a)(4)(A).  Defendants do not appear to dispute this, since the hearsay portion of their opening memorandum was directed only at Hittinger's *affidavit*, and the hearsay portion of their reply memorandum was directly solely to the hearsay status of *Valder's* statements.  *See* Def. Mem. (Dkt. No. 419) at 19; Def. Reply (Dkt. No. 432) at 12–15.

Hittinger's *affidavit* is likewise admissible.  For one thing, Defendants themselves made the affidavit an exhibit to the deposition during their cross-examination of the witness.  They cannot now object to its use on hearsay grounds.  They put it in issue and, in context of their efforts to question the credibility of Mr. Hittinger's deposition testimony, the affidavit bolsters that testimony as a prior consistent statement.  *See* Fed. R. Evid. 801(d)(1)(B).

In addition, the affidavit is in any event admissible under the residual hearsay exception, because it is trustworthy, "offered as evidence of a material fact," and "more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts," and its admission would serve the interests of justice.  Fed. R. Evid. 807. The affidavit is trustworthy because it is based on Hittinger's personal observations, it was sworn, it is fully consistent with his later deposition testimony, and Defendants exercised their full and fair opportunity to cross-examine him about the affidavit at his deposition, *see* Hittinger Dep. at 39–40, 47–51 (defense counsel marking affidavit as a deposition exhibit and cross-examining witness about it); *Bohler-Uddeholm Am., Inc. v. Ellwood Group, Inc.*, 247 F.3d 79, 113 (3d Cir. 2001) (affidavit of executive trustworthy under Rule 807 where based on personal knowledge, made under oath, and offered in pending litigation).  The affidavit is offered as evidence of the fact of Valder's statement and the inspectors' reaction thereto, which are material for the reasons

already discussed.  It is the most probative evidence of these facts because it was offered approximately seven years closer in time to the events at issue than the only other available evidence (Hittinger's deposition testimony).  *See United States v. Harrison*, 296 F.3d 994, 1007 (10th Cir. 2002) (admitting statement under Rule 807 where it was offered closer in time to events than later statements).  For all of these reasons—and because Mr. Hittinger's unavailability at trial results in large part from the litigation delays caused by Defendants, *see supra* note 3—its admission would aid the jury and thus serve the interests of justice.

B. **Valder's Statements.**  Valder's statements that he was pursuing the case against Moore regardless of the merits to advance his career are also admissible for several reasons.

*First*, on the core issue of Defendants' state of mind and retaliatory motives, the statements are admissible for the non-hearsay use of showing how defendants Hartman and Kormann reacted to these comments, whether or not Valder was telling the truth about his own motives.  *See* Fed. R. Evid. 801(c)(2) (statement is hearsay only if "offer[ed] in evidence to prove the truth of the matter asserted in the statement"); *United States v. Wright*, 783 F.2d 1091, 1098 (D.C. Cir. 1986) (substance of telephone call should have been admitted because it was offered not to prove the truth of the matters asserted but their effect on the listener); *United States v. Herrera*, 600 F.2d 502, 504 (5th Cir. 1979) (statements properly admissible when used to show "reaction" to them and not the truth of the matters asserted).  Indeed, this non-hearsay use of Valder's statement—*i.e.*, the fact that Hartman and Kormann "by silence … assent[ed]"— is the very thing that makes the statement direct evidence of Defendants' intent.

*Second*, to the extent offered to prove the truth of what Valder was thinking, the statements are admissible (whether or not Valder testifies) under Rule 803(3) to show Valder's "then-existing state of mind," specifically his motive for assisting Defendants in their retaliatory

vendetta against Moore.  Valder's statements are also admissible (if Valder is unavailable to testify) under Rule 804(b)(3) as a statement against Valder's interest.

*Third*, the statements are not hearsay at all.  Rule 801(d)(2)(E) provides that an out-of-court statement is not hearsay where it was made by the party's coconspirator in the course of the conspiracy.  The Rule "embodies the long-standing doctrine that when two or more individuals are acting in concert toward a common goal, the out-of-court statements of one are admissible against the others, if made in furtherance of the common goal."  *United States v. Gewin*, 471 F.3d 197, 201 (D.C. Cir. 2006).  Valder's statements are admissible under Rule 801(d)(2)(E) because Valder and the postal inspectors were engaged in the joint enterprise of wrongfully prosecuting Moore and these statements were made "during and in furtherance" this enterprise.[5]

## CONCLUSION

For the reasons set forth herein, the Court should grant the motion for reconsideration, and deny Defendants' motion to exclude the affidavit and deposition testimony of William Hittinger.

---

[5] For similar reasons, Valder's statement is not hearsay if offered for its truth against the United States on the FTCA claim because Rule 801(d)(2)(D) provides that an out-of-court statement is not hearsay where it is offered against an opposing party and was made by the party's employee.  Valder was an Assistant United States Attorney employed by the United States at the time these statements were made.  The United States is a defendant here, and so the statements of Valder are admissible against it under Rule 801(d)(2)(D).  *See United States v. Ganadonegro*, 854 F. Supp. 2d 1088, 1120 (D.N.M. 2012) ("the United States Attorney's Office, based on its general agency relationship with the United States to prosecute crimes, is 'the party's agent or employee' who is capable of making statements 'on a matter within the scope of that relationship while it existed'").

Dated:  June 5, 2014

Respectfully submitted,

/s/  Christian G. Vergonis

| | |
|---|---|
| Amy E. Dias (D.C. Bar No. 1002623) | Paul M. Pohl (admitted *pro hac vice*) |
| Henry W. Asbill (D.C. Bar No. 938811) | JONES DAY |
| Christian G. Vergonis (D.C. Bar No. 483293) | One Mellon Bank Center |
| Charles T. Kotuby, Jr. (D.C. Bar No. 492416) | 500 Grant Street, Suite 4500 |
| JONES DAY | Pittsburgh, PA  15219 |
| 51 Louisiana Avenue, N.W. | (T) 412.391.3939 |
| Washington, D.C.  20001 | (F) 412.394.7959 |
| (T) 202.879.3939 | |
| (F) 202.626.1700 | Richard H. Deane Jr. (admitted *pro hac vice*) |
| | JONES DAY |
| | 1420 Peachtree Street, N.E. |
| | Suite 800 |
| | Atlanta, Georgia 30309-3053 |
| | (T) 404.581.8502 |
| | (F) 404.581.8330 |

*Attorneys for Plaintiff*

17